## COE v. RILEY.

No. 11850.

Circuit Court of Appeals, Fifth Circuit.

March 25, 1947.

E. Snow Martin, of Lakeland, Fla., for appellant.

R. W. Shackleford, of Tampa, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Appellant, as plaintiff, alleged that he had received personal injuries from the negligent operation of defendant's tractor-truck at a time when the same was being operated by Lee Roy Woodson as an agent or servant of defendant within the scope of his employment and at a time when defendant had entrusted the truck to Woodson for operation.

After the filing of an answer by defendant and the deposition of Woodson by the plaintiff, defendant moved for summary judgment on the ground that the deposition showed as a matter of law that at the time of the accident Woodson was not operating the truck within the scope of the entrust-

---

[3] 2 T.C. at page 1130.

ment or authority granted to him by the owner, nor as his servant, agent, or employee so as to set up the relation of respondeat superior between defendant and the driver.

Facts of the deposition pertinent to the motion show that defendant, in February, 1946, at Memphis, Tennessee, turned over to Woodson five employees, the tractor-truck, and a semi-trailer loaded with equipment, with instructions to proceed to Mulberry, Florida, to do certain work on the city water tank there.

Upon arrival at Mulberry the trailer was disconnected but the truck was used for odd jobs in connection with the work, such as hauling equipment from the depot, getting gas, and the like. It was against the master's specific orders for Woodson or anyone else to make personal use of the vehicle. It was to be used only in and about the work at hand. Woodson was in charge of the work and was a vice-principal of defendant.

Between twelve and one o'clock on the night of February 24, 1946, Woodson re-ceived a telephone call from two members of his crew saying that they were at a dance hall at Bartow, eight miles distant, without means of getting back to Mulberry, and requesting Woodson to come for them. Woodson complied with their request, stating in his deposition that he took the truck and went after these men as an accommodation to them and also in order that they would be on the job the next morning.[1]

The testimony of Woodson as to his purpose is going after the two employees of defendant apparently is conflicting. At least it is ambiguous. There is his testimony to the effect that he went after the men as an accommodation to the men, and there is also his testimony that he went after them so as to have them on the job for work the next morning.

It was on the way to pick up the men that the accident and injury to plaintiff occurred.

Defendant insists that the tractor-truck had been entrusted to Woodson under strict instructions that it should be used only in

---

[1] (From deposition of Woodson)
"Q. What was the purpose of your going after the boys? A. Because they didn't have any way to get back, or that is the way I took it, or they wouldn't have asked me to come after them. It was about one o'clock in the morning and they had to be at work the next day. I looked around town to find some way to go instead of using the tractor, so took the tractor on my own.

"Q. You took the tractor and went after them in order to have them on the job the next morning? A. Yes sir.
*    *    *    *    *    *    *
"Q. You fully understood when you used it [the truck] that it should not be used for this purpose, didn't you? A. Yes sir.

"Q. That was the specific instructions of your employer, was it not? A. Yes sir.

"Q. Then at the time of this accident, you were going to get these boys at this joint, Mike's Place, because they had asked you to come and get them? A. Yes sir.

"Q. You took this tractor knowing it was strictly against the company's rules to use it for your personal use? A. Yes sir.

"Q. When you took that tractor out, knowing it was against the rules and

positive instructions, you took it as a personal accommodation to your friends, did you not? A. Yes sir.

"Q. The question was asked you about getting them so they could be back for work. That wasn't the reason you went after them, was it? A. I went after them, yes sir.

"Q. As a matter of accommodation to them? A. Yes sir.
*    *    *    *    *    *    *
"Q. At the time you decided to go get these boys, did you consider it was necessary to do so in order to have them back on the job the next morning? A. All I know is, when they called me I looked around and couldn't find no means of transportation to go get them, so took the tractor on my own risk. I didn't realize at the time it was out of line of duty.

"Q. Did you consider it necessary to have them back the next morning, to have them carry on the work they were sent there to do? A. Yes sir.
*    *    *    *    *    *    *
"Q. You don't mean you went to get them solely so they could be on the job the next day. You went for the purpose of accommodating those boys, didn't you? A. Yes, I did, as a matter of accommodation and also so they could be on the job."

and about the business of the employer in the performance of the work which the crew was sent to do; that the driver was engaged only in a personal mission as an accommodation to the two employees at the dance hall; that such a mission was outside the scope within which the use of the truck had been entrusted to Woodson, and that the theory of liability based upon the entrustment to the driver of a dangerous instrumentality, as first announced by the Supreme Court of Florida in Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L.R.A.1917E, 715; id. 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, was not applicable in the absence of proof of the existence of the relation of respondeat superior between the driver and defendant at the time of the accident;[2] and that there was no obligation, contractual or otherwise, upon the employer, or upon his foreman, to furnish the employees with transportation to or from dance halls.

The Court below, thinking that the deposition showed the absence of any relationship that would fasten liability upon the defendant for the alleged negligence of Woodson on the occasion in question, sustained defendant's motion for a summary judgment and dismissed the case.

It seems to be conceded that Woodson was limited in his right to use the truck to the business or purposes which he and his crew had been sent to accomplish. But whether or not keeping his crew on the job in the performance of the work was within the scope of his employment and authority is not a question of law but of fact. If this were within the scope of his employment, and he used the tractor in furtherance of the master's business, or within the scope of his authority, the master would be liable for his alleged negligence. There are statements in his deposition which raise material issues of fact, not only as to whether the truck was being used in and about the master's business, but as to whether or not it was being used at the time of the accident within the scope of its entrustment to Woodson by the defendant.

Resolving of conflicts and ambiguities in a witness's testimony is not a function of the Court to be performed through the medium of summary judgments.

The entry of the summary judgment was erroneous.

Reversed and remanded.

---

[2] Defendant cites: Warner v. Goding, 91 Fla. 260, 107 So. 406; Holstun v. Embry, 124 Fla. 554, 169 So. 400; Eppinger & Russell v. Trembly, 90 Fla. 145, 106 So. 879; Engelman v. Traeger, 102 Fla. 756, 136 So. 527.