Anna GAUCK, as Executrix of the Estate of Clarence H. Gauck, deceased, and individually as surviving spouse of Clarence H. Gauck, deceased, Appellant,

v.

John MELESKI and Commercial Carriers, Inc., Appellees.

No. 21158.

United States Court of Appeals
Fifth Circuit.

June 3, 1965.

W. Dexter Douglass, Tallahassee, Fla., for appellant.

Loyd C. Hilton, Jr., and Barron & Hilton, Panama City, Fla., for appellees.

Before JONES and GEWIN, Circuit Judges, and ESTES, District Judge.

GEWIN, Circuit Judge:

The question presented for decision in this diversity-personal injury action is whether the district court properly determined that the affidavits and exhibits filed by both parties in connection with the defendant's motion for summary judgment revealed no genuine issue of material fact which would warrant submission of the case to a jury.

The controversy arose out of a collision between two trucks in which plaintiff's decedent received injuries from which he died ten days later. Decedent's father, who was riding in the truck with decedent, died that night from injuries sustained in the collision. The accident occurred about one-half mile from the town of Compass Lake, Florida, on U.S. Highway 231, at approximately 6 P.M. on December 17, 1959. The defendant, John Meleski, was driving a truck belonging to the defendant Commercial Carriers, Inc., which collided with a pick-up truck driven by plaintiff's decedent, Clarence H. Gauck. Both vehicles were traveling southward on a two-lane highway. It was raining. The defendant Meleski was driving a tractor truck which was pulling a trailer loaded with four automobiles. One affiant estimated the length of the tractor truck and trailer to be thirty-five feet and its weight to be about ten tons. According to Meleski, his vehicle traveled about five hundred feet beyond the point of impact; and he stated that bags of cement in the pick-up truck burst when the impact occurred. Meleski estimated the speed of the pick-up truck at thirty miles per hour. He did not give the speed of his own vehicle in miles per hour but stated, "I was driving at a safe rate of speed for the conditions. * * *" On December 1, 1961, Anna Gauck, as executrix and surviving spouse of the decedent, filed an amended complaint against Meleski and Commercial Carriers, averring that Meleski negligently crashed his truck into the rear of the truck being driven by the deceased. The defendants answered, denying negligence and alleging contributory negligence on the part of the plaintiff's decedent.

On July 31, 1962, defendants filed their first motion for summary judgment which was supported by defendant John Meleski's affidavit. In substance, this affidavit stated that Meleski, while traveling at a reasonable rate of speed, attempted to overtake and pass the Gauck truck and that, without any prior signal, the Gauck truck suddenly turned across the left-hand side of the road into the path of the truck which Meleski was driving, causing the collision in question. The trial court denied this motion without prejudice on October 18, 1962. Subsequently, defendants took additional affidavits and filed a second motion for summary judgment on December 26, 1962. Plaintiff filed no counter affidavits, and on January 7, 1963, the court granted this second motion for summary judgment. The Court stated in its order:

"[T]here is no genuine issue as to any material fact and * * * the defendants are entitled to a judgment as a matter of law, in that the averments of defendants' driver to the effect that the vehicle operated by the plaintiff's deceased spouse did

1. Rule 60(b) (2) authorizes relief from a final judgment where the movant presents "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."

2. The following language is contained in the September 16 order:
"Accepting, as it must, all facts developed on this record by affidavits as proved, this Court has thoroughly and carefully re-examined and reconsidered this full record, including all facets of the averments and contentions developed on this record following the Court's order granting summary judgment and dismissing counterclaim. *Having allowed the reopening of the summary judgment issue out of an abundance of caution to allow plaintiff full opportunity to overcome the compelling showing of defendants, this Court concludes that there is upon this record no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law for the reasons set forth in its order of January 3, 1963 and filed*

not give any signal whatsoever prior to or while turning across his left-hand side of the road, said absence of signal being a clear proximate cause resulting in the damages sustained, and under the law of the State of Florida this constituted contributory negligence barring recovery; * * *."

On March 27, 1963, plaintiff filed a motion, supported by numerous affidavits, to vacate the previous summary judgment under Rule 60(b), Fed.R.Civ.P.[1] The trial court reopened[2] the summary judgment on September 16, 1963. After considering all the affidavits and exhibits filed to that date, he again concluded that there was no genuine issue as to any material fact. Hence, he regranted defendants' motion for summary judgment for the reasons set forth in his previous order.

■■ Our task then is to determine whether a genuine issue of fact is raised by the affidavits and exhibits filed by the parties in the reopened summary judgment proceeding. The summary judg-

*herein January 7, 1963.* (Emphasis added.)
It is, therefore,
ORDERED:
1. Motion of defendants for summary judgment be and it ι. hereby granted."
No direct challenge is made upon the district court's decision to reopen the judgment, so we shall treat this action of the trial judge as having been appropriately taken. It should nevertheless be pointed out that the 60(b) motion does not specifically set forth the grounds on which the plaintiff sought relief from the final judgment. The affidavits, argument, and court orders do indicate that relief was predicated on Rule 60(b) (2), relating to newly discovered evidence. While it is apparent from the record that some of the evidence which was presented in the plaintiff's affidavits filed in support of the 60(b) motion was also available to plaintiff at the time of the hearing on the original summary judgment motion, it has not been clearly demonstrated that this is true of all the evidence contained in these affidavits. In all circumstances, we cannot say that the court committed clear error in reopening the judgment.

ment procedure may not be invoked where there is a *bona fide* factual dispute between the parties. It is well settled that the court's duty is limited to determining whether factual issues exist, not in determining the issues themselves. See Slagle v. United States, 228 F.2d 673 (5 Cir. 1956).

In United States v. Diebold, Inc. (1962), 369 U.S. 654, 82 S.Ct. 993, 8 L. Ed.2d 176, the Court said that "the inferences to be drawn from the underlying facts contained in [the materials presented] must be viewed in the light most favorable to the party opposing the motion" and where the "materials * * * raised a genuine issue as to the ultimate facts material * * * ", summary judgment was improper.

▮ Rule 56(e) was amended effective July 1, 1963, to provide that:

" * * * [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. As amended Jan. 21, 1963, Eff. July 1, 1963."

The basic mission of the summary judgment procedure is to allow the court to pierce the pleadings and assess the proof in order to see whether there is a genuine need for a trial. See Dressler v. M/V Sandpiper, 331 F.2d 130 (2 Cir. 1964); Advisory Committee, U.S.C.A., Nov. 1963, pamphlet, pp. 55–56; 2 Moore's Fed.Practice, 2d ed. ¶56.22 (Supp.1964),

at 148–149, also ¶11.02, p. 2104.[3] It is our conclusion that, according to Rule 56(e) as amended, the trial court can, and indeed should, assess the evidence presented upon the motion for summary judgment to determine its admissibility and to ascertain whether all the admissible evidence creates a genuine, material dispute of facts. The trial court should be very careful, however, to avoid assessing the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device. Assessment of the probative value of evidence is properly the function of the jury or the judge sitting as a trier of facts.[4]

▮ Bearing the above principles in mind, we turn now to an assessment of the affidavits and exhibits which were filed by the parties in connection with the summary judgment motion. There were no eyewitnesses to the accident other than the defendant Meleski. His affidavit that the driver of the Gauck truck failed to give a left-turn signal is therefore uncontradicted and must be accepted as true. The district court, apparently relying in part on our decision in Wesley v. English (5 Cir. 1934), 71 F.2d 392, concluded that Gauck's failure to signal constituted, as a matter of law, contributory negligence which proximately caused his injuries and subsequent death. In Wesley, we approved an instruction to the effect that failure to give an appropriate signal prior to making a left turn from a major highway was negligence as a matter of law. It should be noted that Wesley is a pre-Erie federal court decision that does not purport to follow Florida law. Subsequent to this decision, the Florida courts have made it clear that violation of a highway safety statute[5] is only prima facie evidence of negligence

---

3. "Rule 11 [Signing of pleadings] in conjunction with Rule 16, on Pre-Trial Procedure, Rule 56 on Summary Judgment, and Rule 36 on Admission of Facts and of Genuineness of Documents, serves a valuable function in winnowing the grain from the chaff. One vital objective of the Rules is that litigation concerns itself with real issues."

4. The instant case was set on the jury docket.

5. Fla.Stat.Ann. § 317.37 [now § 317.371] requires that a motorist indicate his intention to turn right or left by means of a signal given continuously during the last one hundred feet traveled by the vehicle before turning.

and may be explained away by extenuating circumstances. Where violation of a traffic law has been shown, it becomes the jury's task to determine from all the facts whether the prima facie showing is overcome by evidence of surrounding circumstances and conditions. See Allen v. Hooper, 126 Fla. 458, 171 So. 513 (1937); Clark v. Sumner, 72 So.2d 375, 378 (Fla. 1954); Delevis v. Troyer (Fla.Ct.App.2d Dist.1962), 142 So.2d 783, 785.

■ Because of the peculiarly elusive nature of the term "negligence" and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of · by summary judgment, even where the historical facts are concededly undisputed. Hence it may be that the question of plaintiff's contributory negligence had to be submitted to the jury, since in Florida violation of a traffic law is not always negligence *per se*. In Delevis v. Troyer, supra, a case strikingly similar to the instant one, the Florida District Court of Appeal reversed a summary judgment for the defendants which had been predicated on the trial court's holding that plaintiff's failure to give a turn signal in violation of § 317.37 [now § 317.371] constituted contributory negligence as a matter of law.[6] Therefore, under a strict Erie application of Delevis it may be that the district court erred in granting a summary judgment on this ground, assuming sufficient evidence in the affidavits and exhibits to warrant submission of the issue of defendant's negligence to a jury.

■ Regardless of the correctness of the foregoing supposition, we think there is another reason why the district court erred in granting a summary judgment for the defendant. There is, in our view, sufficient conflict in the record with respect to the position of the Gauck truck at the time of the collision to warrant denial of the motion for summary judgment. The affidavits filed by the plaintiff in support of her 60(b) motion contain enough admissible evidence that the Gauck truck was struck from the rear while it was still in the right lane to create an issue as to whether Gauck's negligence, assuming arguendo that he was negligent, was a proximate cause of the collision. Of course, contributory negligence alone does not bar recovery; such negligence must be a proximate cause of the injury. E. g., Bessett v. Hackett, 66 So.2d 694 (Fla.1953); Kuhn v. Telford (Fla.Dist.Ct.App.2d Dist. 1959), 115 So.2d 36, 40; see also General Portland Cement Co. v. Walker (5 Cir. 1961), 293 F.2d 294.

■ We realize that many, if not most, of the statements in the plaintiff's affidavits are patently inadmissible. Nevertheless, our assessment of all the affidavits and photographs of the wrecked vehicles reveals that the few admissible statements, when considered cumulatively, are sufficient to raise a genuine issue of proximate cause. The affidavits and exhibits contain evidence from which it can be inferred that the Gauck truck was struck from the rear by the defendant's truck while the Gauck truck was still in the right, or west, lane. R. C. Cannon, the first witness to arrive at the scene of the accident, stated that he found the decedent Clarence H. Gauck alive and that he said, "He hit me from behind." [7] In addition, there was evidence which indicated that some of the cement which the Gauck truck was carrying had been

---

6. Florida's summary judgment procedure is virtually identical to Rule 56. See Fla.Rules Civ.Proc., Rule 1.36, 30 F.S.A.; Buck v. Hardy, 106 So.2d 428 (Fla.App. 1958); Warring v. Winn-Dixie Stores, Inc., 105 So.2d 915 (Fla.Dist.Ct.App. 3d Dist.1958).

7. This statement would appear to be admissible as part of the *res gestae* under Florida law. See Foster v. Thornton, 125 Fla. 699, 170 So. 459 (1936). See also Rule 43(a), Fed.R.Civ.P., Hambrice v. F. W. Woolworth Co. (5 Cir. 1961), 290 F.2d 557; Dallas County v. Commercial Union Assur. Co. (5 Cir. 1961), 286 F.2d 388; Monarch Ins. Co. of Ohio v. Spach (5 Cir. 1960), 281 F.2d 401.

438

spilled onto the highway. The traces of cement began in the west, or right, lane, and later trailed across the highway into the east, or left, lane at an angle of 25 degrees for approximately 35 feet. Rubber tire skid marks were found in the west (right) lane on both sides of this streak of cement. The affidavit of R. C. Cannon also indicates that very soon after the accident the defendant Meleski made the following admission: "I hit something, I don't know what it was." This evidence could support a conclusion that the plaintiff's damages were proximately caused by the sole negligence of the defendant Meleski. In these circumstances, we think this case should be tried.

Reversed and remanded for further proceedings consistent herewith.

Kaufman, Circuit Judge, dissented.