687 F.2d 136
 29 Fair Empl.Prac.Cas. 929,
29 Empl. Prac. Dec. P 32,959
Norma MILLER, Plaintiff-Appellant,
v.
WFLI RADIO INCORPORATED, Defendant-Appellee.
 No. 80-5487.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 2, 1982.
Decided Aug. 17, 1982.
 
 Charles Ray, Nashville, Tenn., J. Troy Wolfe, Wolfe, Jenkins & Grantham, P. C., Chattanooga, Tenn., for plaintiff-appellant.
 Selma Cash Paty, Paty, Rymer & Ulin, Allison Ulin, Chattanooga, Tenn., for defendant-appellee.
 Before MARTIN, Circuit Judge, WEICK, Senior Circuit Judge, and CHURCHILL, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Norma Miller appeals a judgment for defendant WFLI Radio Inc. in her Title VII employment discrimination action. WFLI operates two radio stations in Chattanooga, Tennessee, WFLI-AM and WSIM-FM. Miller went to work selling advertising for WFLI-AM in 1973. Her job performance was so outstanding that she was promoted to WFLI-AM sales manager. As of 1977, Miller's sales volume far exceeded that of any other WFLI salesperson.
 
 
 2
 In July, 1977, Johnny Eagle, a former WFLI employee, returned to work at the radio station. Eagle was a long-time friend and associate of one of WFLI's owners. Upon his return to the station Eagle was given a job selling advertising for WSIM-FM. His success at this endeavor can only be described as mediocre.
 
 
 3
 Until 1978, WFLI-AM and WSIM-FM had separate programming and maintained separate advertising staffs. In 1978, however, WFLI began "simulcasting" its AM and FM programs for a portion of each day. The effect of this change was a reduction in the total number of advertising slots available for sale.
 
 
 4
 On August 8, 1978, station management informed Miller that she would have to begin splitting her advertising accounts with Johnny Eagle. Miller refused to do so and was discharged. WFLI filed a separation notice with the Tennessee Department of Employment Security indicating that Miller was terminated because her position had been "deleted." After Miller's discharge, Eagle assumed most of her former duties under the title "National Sales Manager."
 
 
 5
 On August 10, 1979, Miller filed a Title VII action in District Court, alleging "disparate treatment" on account of her sex. In its answer, WFLI contended that Miller was terminated because she was "inefficient" in the performance of her duties, "disloyal," and temperamental.
 
 
 6
 The case was heard by a United States Magistrate sitting without a jury. After trial, the Magistrate issued a memorandum containing findings of fact and conclusions of law and entered judgment for defendant WFLI.
 
 
 7
 The Magistrate found that Miller had succeeded in making out a prima facie case of sex discrimination. He also determined that WFLI's proffered "reasons" for Miller's discharge were specious and pretextual. This ruling was based on specific credibility findings in which the Magistrate rejected WFLI's allegations that Miller was either "inefficient" or disruptive. On the contrary, he expressed the opinion that Miller was a competent and effective Sales Manager.
 
 
 8
 Despite these preliminary findings, the Magistrate held that Miller had failed to sustain her burden of proof of sex discrimination. On the basis of the testimony at trial, he decided that the "real" reason for Miller's discharge was a legitimate, non-discriminatory preference for the services of Johnny Eagle. The Magistrate apparently arrived at this conclusion independently, for the record before us does not show that WFLI either pleaded or emphasized in its argument a "preference" for Eagle as the basis for its decision to terminate Miller.
 
 
 9
 The controlling legal authority in Title VII "disparate treatment" cases is the Supreme Court's recent decision in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Burdine is, in essence, a refinement of the burden of proof analysis previously set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). That analysis may be summarized as follows: (1) the plaintiff must make out a prima facie case of discrimination; (2) at this point, the defendant assumes the burden of producing (as distinct from proving) a reason for its actions which is, on its face, legitimate and non-discriminatory; (3) it is then incumbent on the plaintiff to carry her continuing burden of proof that she was, in fact, a victim of sex discrimination. She may do so either "directly" with affirmative evidence of discrimination, or "indirectly" by showing that the "employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. Our task on this appeal is to determine whether the lower court correctly applied the Burdine paradigm.
 
 
 10
 As we have already noted, the proceedings below followed the first two steps of the Burdine scheme in the conventional manner. First, Miller made out her prima facie case and second, WFLI articulated a set of "business reasons" for her discharge.
 
 
 11
 In the usual case, the trier of fact resolves the questions raised at the third step of the Burdine analysis in one of two ways: it either finds that the plaintiff failed to sustain her ultimate burden of disproving the defendant's proffered explanation for its actions and enters judgment for the defendant or it finds that the plaintiff showed, by a preponderance of the evidence, that the defendant's "reasons" were "pretexts" which masked discriminatory conduct and enters judgment for the plaintiff.
 
 
 12
 In the present controversy the Magistrate departed from this norm. He found, on the one hand, that Miller had succeeded in demonstrating that WFLI's "business reasons" were specious but concluded, on the other hand, that she had nevertheless failed to sustain her burden of proof of sex discrimination. The apparent basis for this result was the Magistrate's conviction that the WFLI management simply preferred Johnny Eagle's services to those of Norma Miller. In short, the Magistrate drew an inference of legitimate, nondiscriminatory "business reasons" for Miller's discharge other than those advanced by the defendant. In light of the courts' customary reliance on a litigant to select the interpretation of the facts most favorable to his own case, this is a singular result indeed. If WFLI was actually motivated by a nondiscriminatory preference for Johnny Eagle, we are, to say the least, surprised that it did not so argue from the beginning.
 
 
 13
 Nevertheless, we cannot agree with the dissenting member of the panel that the unusual posture of this case entitles Miller to judgment as a matter of law. This view, in our opinion, rests on too mechanical an application of the Burdine proof paradigm. We might feel differently if there were no support whatsoever in the record for the Magistrate's conclusions. However, a careful reading of the testimony of William and Michael Benns, two of the radio station's owners, reveals a strong suggestion that William Benns was determined to rehire Johnny Eagle in 1977. Although, inexplicably, WFLI neither developed nor pursued this argument, we cannot fairly hold that it was never raised at all. Under these circumstances, adherence to the dissent's position would leave us with the nagging suspicion that we had improperly exalted form over substance in an effort to force the proceedings below into the Burdine mold.
 
 
 14
 On balance, we believe that the appropriate disposition of this case is a remand for reconsideration. Burdine clearly supports this decision. In that opinion, Justice Powell, writing for a unanimous Court, emphasized the requirement that a defendant be "clear" and "reasonably specific" in responding to a plaintiff's prima facie case. 450 U.S. at 258, 101 S.Ct. 1096, 67 L.Ed.2d at 218. See also Loeb v. Textron, Inc., 600 F.2d 1003, 1011-1012, n.5 (1st Cir. 1979). The Court went on to explain:
 
 
 15
 Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.
 
 
 16
 450 U.S. at 255-56, 101 S.Ct. at 1095, 67 L.Ed.2d at 216-217 (emphasis added).
 
 
 17
 The proceedings below point to a single, critical factual issue in this matter-whether Miller's discharge was a discriminatory act, or whether it was the product of an honest, sex-blind preference on the part of WFLI management for Johnny Eagle's services. The record persuades us that Miller was not, as a matter of law, afforded the requisite "full and fair opportunity" to address, develop, and disprove the latter theory. It is fundamental that she be given a chance to do so-proof of Title VII discrimination is difficult enough without asking plaintiffs to assume the additional burden of second-guessing the defenses on which the opposing party has chosen to rely.
 
 
 18
 Our ruling does not, of course, compel the trial court to reach a different result after rehearing. Neither should it be read as an intimation by this court that an employer is liable under Title VII if in fact he is guilty of nothing more than a business decision of questionable wisdom. It is, on the contrary, a reaffirmation of the principle expressed by the Supreme Court in Burdine that a Title VII plaintiff must be given a "full and fair opportunity" to prove her case.
 
 
 19
 On remand, the court should consider the deposition testimony of former WFLI employee Nadine Gray. This testimony, despite the remoteness in time of Gray's employment with WFLI, is clearly relevant to the plaintiff's theory that the radio station has a long history of discrimination against female employees. See Detroit Police Officers Assn. v. Young, 608 F.2d 671, 689 (6th Cir. 1979).
 
 
 20
 The judgment below is vacated and the case remanded for proceedings consistent with this opinion.
 
 
 21
 CHURCHILL, District Judge, dissenting.
 
 
 22
 I respectfully dissent. The majority remands for rehearing in order to allow the plaintiff a "full and fair opportunity" to respond to legitimate business reasons articulated, not by the defendant, but rather by the magistrate who tried the case. Such a result is not mandated by Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under Burdine, the plaintiff must first present a prima facie case of discrimination. This was done. Next, the defendant must produce evidence of a "legitimate, nondiscriminatory reason" for its action. On the facts as found by the magistrate, the defendant failed completely in providing such a legitimate reason. The third step in the Burdine paradigm is the plaintiff's opportunity to carry the burden of persuasion. By showing that the defendant's explanation was unworthy of credence, the plaintiff satisfied the ultimate burden of persuasion required under Burdine. Our inquiry should cease at this point.
 
 
 23
 I would remand for determination of back pay due the plaintiff.
 
 
 
 *
 Honorable James P. Churchill, District Judge for the United States District Court for the Eastern District of Michigan, sitting by designation