Otto P. **LENZ, Plaintiff-Appellant,**

v.

**ERDMANN CORPORATION, Walter Laun, Defendants-Appellees.**

No. 84–5720.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1985.

Decided Sept. 16, 1985.

Donna N. Clements-Gaddie, argued, Louisville, Ky., for plaintiff-appellant.

Jon L. Fleischaker, Jo Ann Dale, argued, Wyatt, Tarrant & Combs, Louisville, Ky., for defendants-appellees.

Before JONES and KRUPANSKY, Circuit Judges, and EDWARDS, Senior Circuit Judge.

PER CURIAM.

Plaintiff-Appellant Otto Lenz appeals from the district court's entry of summary judgment in favor of the defendants-appellees, his former employer Erdmann Corporation and his former supervisor Walter Laun, in this suit brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* We find that a genuine question of fact remains concerning whether Erdmann's reason for discharging Lenz was a pretext, and consequently, we reverse the district court.

Lenz was 55 years old at the time of his discharge from Erdmann. For over seven years, Lenz had been an inside sales employee of Erdmann. The position generally required working hours from 8 a.m. to 5 p.m. Monday through Friday. In late December 1982, defendant Laun, who was Lenz's direct supervisor and a part owner of Erdmann, circulated a memorandum to all sales personnel directing them to appear for work on Saturday, January 8, 1983, to move records. On Thursday, January 6, Lenz informed Laun that he would not report to work on Saturday, January 8. Laun asked for a reason. Lenz replied that he needed to attend to personal business and declined to elaborate. Laun told Lenz that his reason was not good enough and the brief exchange concluded. Lenz did not appear for work on January 8. Laun demanded an explanation on Monday.

Lenz again told Laun that he had taken care of some personal business on Saturday. He also raised several of his policy disagreements with management. This conversation concluded with Laun firing Lenz. Both Lenz and Laun testified that at that time Laun stated he was firing Lenz because of Lenz's "bad attitude."

Prior to filing this action, Lenz properly exhausted his administrative remedies. He filed the complaint in this action on January 3, 1984. On February 7, both Lenz and Laun were deposed. The next day, February 8, Lenz sent a letter to defendants' counsel requesting document production in response to eight questions. After six weeks of silence from Erdmann and Laun, a second letter on March 28 renewed this request. On March 29, counsel for the defendants replied that his co-counsel was on sick leave and he "was not available." He requested Lenz's counsel's patience. On April 23, 1984 the defendants' co-counsel informed Lenz's counsel that she had returned to work and that what documents existed were available for inspection. The parties agreed that Lenz's requests raising issues on which no documents existed would be treated as interrogatories. Defendants answered the interrogatories on May 16, 1984, and simultaneously filed a motion for summary judgment. Lenz answered in part by stating that the deposition of Daniel Demoise, Erdmann's president, was scheduled for June 15, 1984, and that other persons concerned with the case needed to be heard. On July 3, 1984, the district court granted summary judgment to the defendants on the ground that, assuming Lenz had stated a prima facie case of age discrimination, Erdmann had stated a non-discriminatory reason for his discharge and Lenz had not produced evidence of pretext. On July 17, Lenz filed the deposition testimony of Demoise. This appeal followed.

At the summary judgment stage of a lawsuit the moving parties have the burden of showing conclusively that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). To

determine whether Erdmann and Laun met this burden the district court must evaluate the evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party, here Lenz. *Id.* When we review the record in light of this test, it is apparent that entering summary judgment in favor of Erdmann and Laun was improper.

First, the district court assumed, without deciding, that Lenz had created a genuine issue of material fact on each of the elements of a prima facie case of age discrimination. Therefore, it did not grant the defendants summary judgment on this ground. This was correct because at least a genuine issue of material fact exists on each of the elements of a prima facie case as established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Lenz was unquestionably in the protected class at the time of his discharge. The testimony of Erdmann management indicates that he was qualified for the position from which he was discharged. The defendants' reply to Lenz's interrogatories would support a finding that he was replaced by a younger person, Anthony Elliott, age 30. *See Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982). On remand, summary judgment on the ground that no genuine issue has been raised concerning Lenz's prima facie case is not likely to be appropriate.

Second, the district court was correct that Erdmann and Laun articulated non-discriminatory, although varying, reasons for discharging Lenz: either, as the district court found, because he refused to work when directed to do so, or because of his "bad attitude."

Third, the district court erred in its holding that Lenz had not raised a genuine question of fact concerning the material issue of whether Erdmann's and Laun's articulated reasons were pretexts disguising age discrimination. The district court recognized that summary judgment on issues of intent and motive is rarely appropriate. It did not, however, view the evidence before it in the light most favorable to Lenz. Lenz's theory of pretext was that Erdmann was in financial difficulty, to which it responded in part by attempting to rid itself of older, higher salaried employees. Lenz was in the protected class and claims to have been the highest paid employee other than Erdmann owners. Laun testified by deposition that approximately five months before he discharged Lenz, Erdmann had cut pay by 20% and had begun scheduling employees for four days a week of work. Lenz testified as follows:

> Erdmann was having difficult times, as was the whole economy at that particular time, and Erdmann was in a position where it—the main function that Erdmann has to offer its customers is service, and if you don't have enough time or enough people to service the accounts, it's going to reflect in decreased business, which was a situation that Erdmann found itself in at that particular time.

The district court's memorandum does not consider this evidence.

The evidence before the district court reveals that Lenz had a satisfactory work record. Laun testified that Saturday work, even for the annual inventory, was neither an express nor an implied condition of employment for Erdmann's staff. Laun also acknowledged that Lenz had frequently worked Saturdays on his own initiative during his seven years with Erdmann, that Lenz was not frequently absent or late, and did not leave work early. Additionally, according to Laun, Lenz maintained good relationships with his customers. The district court is silent regarding this material evidence.

Lenz also alleges a pattern of discrimination against older employees. Erdmann requested that Hugh Eades retire early, according to Lenz, but because of Eades' union seniority the company stopped short of firing him. Lenz was not a union member. Helen Evans allegedly was a senior Erdmann employee who refused early retirement and was fired. As the district court noted, Evans sued Erdmann in state

court. Her action was dismissed but she did not appeal. The district court concludes that these two incidents are "isolated" and "unrelated." Viewing the alleged treatment of Eades and Evans in the light most favorable to Lenz, these incidents support his theory of disparate treatment of older employees at a time of financial difficulty for Erdmann.

Further, the district court erred when it stated that Lenz's own deposition testimony supported the validity of the defendants' articulated reasons for discharging him. Viewed in the light most favorable to Lenz, his statements only reveal that he was aware of Erdmann's and Laun's pretexts. The nature of a pretext is that its true motivation is unstated.

■ Viewed in the light most favorable to Lenz, the evidence before the district court reveals that Erdmann was in a time of financial difficulty. As a partial owner of Erdmann, Laun stood to gain or lose as the company's fortunes rose or fell. Lenz was a high-paid member of the protected class, whose work performance was at least satisfactory. Erdmann had acted against two other employees who were members of the protected class. Lenz raised a genuine question of fact concerning whether the defendants' articulated reasons for discharging him were pretexts for age discrimination. Entry of summary judgment in favor of the defendants was improper.

Because Lenz had created a genuine question of material fact concerning whether the defendants' articulated reasons for his discharge were pretexts for age discrimination, we REVERSE the district court's entry of summary judgment and REMAND for further proceedings not inconsistent with this opinion.

KRUPANSKY, Circuit Judge, dissenting.

In view of the disparities between existing legal precedent applicable to the facts of this case as disclosed by the record and the conclusions articulated by the majority opinion, I am prompted to respectfully dissent.

In *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982), the court defined the burden of proof placed upon a plaintiff in a Title VII discrimination case when it stated:

The ... test for making out a prima facie case of discrimination requires that a plaintiff demonstrate that (1) he was a member of a protected class; (2) he was discharged; (3) he was qualified for the position; (4) he was replaced by a younger person.

In its consideration of the defendant's motion for summary judgment, the trial court in the case at bar assumed without deciding that the plaintiff had satisfied the *Ackerman* criteria.[1] In its pronouncement in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court succinctly repeated the appropriate burden of proof and persuasion to be assigned the parties during the progress of the trial:

In *McDonnell Douglas Corp. v. Green*, [supra], we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving

---

1. The majority opinion in addressing the application of *Ackerman* either misinterprets the significance of the trial judge's action or intentionally extends its reasoning beyond the issues joined by the motion for summary judgment. The trial court, for purposes of ruling upon the motion for summary judgment, assumed that the plaintiff had established a prima facie case in accordance with the direction of *Ackerman*. My reading of the opinion issued by the court below fails to disclose as the majority opinion concludes "that Lenz had created a genuine issue of material fact on each of the elements of a prima facie case of age discrimination." and "Therefore refused to grant the defendant's summary judgment on this ground." The trial court made no such finding or disposition as is apparent from the trial court's qualifying language "Assuming, without deciding, that plaintiff has satisfied the *Ackerman* criteria ...".

the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*, [411 U.S.] at 802, 93 S.Ct., at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.*, at 804, 93 S.Ct., at 1825.

450 U.S. at 252–53, 101 S.Ct. at 1093.

The trial court having assumed that the plaintiff had presented a prima facie case of age discrimination proceeded to conclude that the defendant had in fact articulated—and, indeed, plaintiff had confirmed—a legitimate nondiscriminatory reason for terminating the plaintiff, namely, that he refused to work when directed to do so. Thus, according to *Burdine, supra,* 450 U.S. at 253, 101 S.Ct. at 1093, the burden of proof remained with the plaintiff to show that the reasons articulated by the defendant were pretextual.

The trial court thereupon proceeded to dispose of the motion for summary judgment on the only remaining issue, i.e. whether or not there existed a conflict as to a material fact concerning the legitimate reasons for discharge articulated by the defendants. Without admissible factual support in the record and by pyramiding inferences upon inferences, the majority opinion concludes that the nondiscriminatory reasons for Lenz's discharge, as articulated by the defendants, were pretextual.

It is well established that in ruling on a motion for summary judgment the court must consider the evidence in the light most favorable to the party opposing the motion, and may grant the motion only if no genuine issue of material fact exists. *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979). The critical determination, then, is whether there exists a genuine dispute as to any material fact. If there is no genuine issue, the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he principle judicial

inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 2d § 2725 (1983). *See also, Felix v. Young,* 536 F.2d 1126 (6th Cir.1976); *Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.,* 484 F.2d 1037 (3rd Cir.1973).

However, Federal Rule of Civil Procedure 56(e) clearly states that a party opposing a motion for summary judgment, which is supported by affidavits or otherwise "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *See Wayne v. Tennessee Valley Authority,* 730 F.2d 392 (5th Cir.1984) *cert. denied,* —— U.S. ——, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985); *Project Release v. Prevost,* 722 F.2d 960 (2nd Cir.1983); *Shah v. Mount Zion Hospital & Medical Center,* 642 F.2d 268 (9th Cir.1981); *Solomon v. Houston Corrugated Box Co.,* 526 F.2d 389 (5th Cir.1976).

The Advisory Committee Note to Rule 56(e) explains that the purpose for this amendment to the rule was to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. [The doctrine] which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule." Advisory Committee Note to Rule 56(e), Vol. 12 Appendix; 31 F.R.D. 647, 648.

As I read the record in the case at bar, both the plaintiff and the defendant rely exclusively upon the depositions of plaintiff, Otto Lenz, and Walter Luan, a defendant herein and a vice president of Erdmann Corporation, for support of their respective adversary positions in addressing the motion for summary judgment. This is obviously so since the deposition of Daniel Demoise, president of Erdmann Corporation was not filed until July 17, 1984, some two weeks subsequent to the date that the district court granted Erdmann's motion for

summary judgment.[2]

The majority in its opinion reasons that "Lenz's theory of pretext was that Erdmann was in financial difficulty, to which it responded in part by attempting to rid itself of older, higher salaried employees. Lenz was in the protected class and claims to have been the highest paid employee other than Erdmann owners." The majority supports this conclusory statement by the following testimony given by Lenz:

> Erdmann was having difficult times, as was the whole economy at that particular time, and Erdmann was in a position where it—the main function that Erdmann has to offer its customers is service, and if you don't have enough time or enough people to service the accounts, it's going to reflect in decreased business, which was a situation that Erdmann found itself in at that particular time.

Initially, it should be noted that evidence of Erdmann's effort to implement economy measures, by having negotiated and achieved a 20% across-the-board pay reduction with its employees and its consideration of a four-day work week, does not support the inference or conclusion that Erdmann was in financial distress and it was attempting to rid itself of older, higher salaried employees absent some affirmative evidence in support of such conclusions. The record fails to disclose any such evidence. Certainly, an objective analysis of Lenz's speculation and conjecture cannot be construed as supporting a conclusion that Erdmann was in financial distress.

The majority opinion also erroneously concludes from Lenz's self-serving inadmissible testimony concerning the alleged termination of two Erdmann employees, i.e. Hugh Eades and Helen Evans, that Erdmann was attempting to rid itself of older higher salaried employees because it was in financial difficulties. A page-by-page review of the deposition before the trial court and here on appellate review fails to disclose any admissible factual support for the majority's conclusion. There is nothing in the record that indicates the comparative wage scales of any of the employees; there is nothing in the record beyond Lenz's conjecture that Erdmann was experiencing "financial difficulties". There is nothing in the record that would indicate disparate treatment between Lenz or any other employee of the Erdmann Corporation. Contrary to the majority opinion, Hugh Eades was never requested to take early retirement and continues as an employee to this very date. The facts as disclosed by the record concerning Eades reflect that when it became apparent to the company that its Flexible Hose Division was no longer competitive with outside suppliers, it was decided by company management with the concurrence of Eades that the Flexible Hose Division would be discontinued and the hoses would be purchased from outside suppliers. With Eades' consent, he was transferred to the warehouse where he continued to work at the same salary scale that he worked before. Although the record concerning Helen Evans is not quite as explicit, it would appear that there were discus-

2. A review of the Demoise deposition fails to disclose any material evidence either in support of or in opposition to the motion for summary judgment. The relevant evidence probative of the issue joined by the motion is incorporated in the Lenz and Luan depositions. Mindful of this court's admonition in *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979), that in ruling on a motion for summary judgment, the court must consider the evidence in the light most favorable to the party opposing the motion, and may grant the motion only if no genuine issue of material fact exists, I am also equally cognizant of the existing legal precedent that directs that neither an appellate court nor a trial court is permitted to weigh the evidence, assess its probative value, pass upon credibility, speculate as to the ultimate findings or choose between factual inferences that may be drawn from the evidence presented in support of or in opposition to the motion. *Aronsen v. Crown Zellerbach,* 662 F.2d 584 (9th Cir.1981), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887 (5th Cir. 1980); *U.S. v. An Article of Food Consisting of 345/50-Pound Bags,* 622 F.2d 768 (5th Cir.1980); *Tankersley v. Albright,* 514 F.2d 956 (7th Cir. 1975); *Gross v. Southern Ry. Co.,* 414 F.2d 292 (5th Cir.1969); *Gauck v. Meleski,* 346 F.2d 433 (5th Cir.1965); *Coe v. Riley,* 160 F.2d 538 (5th Cir.1947).

sions between Evans and the Personnel Department concerning early retirement and the record would infer that she may have been terminated. However, the record further explicitly reflects the following direct testimony disclosed in the deposition:

Q. Did she take early retirement?

A. She has taken early retirement.

Q. Do you know that she had been employed after she left Erdmann?

A. Yes, I do know that.

Moreover, Lenz's deposition discloses the following colloquy:

Q. Do you feel that there was age discrimination?

A. Yes, definitely. I think that Hugh Evans is a definite example and again *I am stating my own opinion.*

Apparent from the foregoing, Lenz was testifying to opinion not fact, as the trial court concluded:

The Court is at a loss to discern how these two isolated and unrelated incidents demonstrate disparate treatment or impact.

In a disparate impact or treatment case plaintiff retains the burden of showing that defendant's proffered nondiscriminatory reason is pretextual. *Miller v. WFLI Radio, Inc.,* 687 F.2d 136 (6th Cir.1982). In light of plaintiff's own testimony that his discharge was the result of his refusal to work and his refusal to furnish an acceptable excuse for his failure, we cannot see any basis for a finding of disparity.

Obviously, the trial court's analysis was correct when applied to the facts in disposing of the motion for summary judgment. Comparative analysis of the depositions here in issue with the majority opinion suggests the conclusion that the majority has undertaken to conjecture and speculate as to ultimate findings of fact, pass upon credibility, weigh and evaluate the evidence, and assess the probative value of the evidence contrary to existing precedent. Moreover, the majority evaluations are not limited to admissible factual evidence and inferences but incorporate Lenz's conclusory, unsupported self-serving declarations in its logic and reason to support its decision.

The facts of this case as disclosed by the depositions were accurately related by the trial court.

In late December, 1982 and early January, 1983, Lenz was a salaried inside sales employee with the Erdmann Corporation working under the direct supervision of Luan. Approximately two weeks prior to January 8, 1983, Luan distributed a directive to all sales people, which instructed them to appear for work on January 8, 1983 to move accumulated outdated catalogues. Lenz admitted that he received the notice that directed him to appear for work on January 8, 1983.

Shortly after receiving the notice, Lenz admitted that he advised a co-worker, Delbert Heishman, that he had decided not to work on Saturdays in the future except to take inventory. On January 6, 1983, Lenz for the first time advised his supervisor Luan that he would not work on January 8 as requested. When Luan made inquiry as to the reasons for his refusal to work, Lenz refused an explanation other than that he intended to attend to unspecified personal business. Lenz did not appear for work on January 8 nor did he telephone to explain his absence. On the following Monday, Luan again requested an explanation for his failure to appear for work on January 8, as directed. Lenz again related that he was attending to personal business. At the conclusion of the conversation, Luan advised Lenz that he had a bad attitude and that he was terminated.

Nothing in the record or the deposition discloses that any other employee, regardless of age had ever engaged in similar behavior admitted by Lenz. There was no issue of fact before the trial court that Lenz was not a fair or even good employee. He frequently worked on Saturday during his seven years at the Erdmann Corporation; he was not frequently absent or late nor did he leave work early. It is conceded that he maintained a good relationship with

his customers. However, his past work record does not mitigate his insubordination in refusing to work when required to do so.

The essence of the issue confronting the trial court in its consideration of the motion for summary judgment was the reason for Lenz's discharge. Apart from any speculation as to the ultimate findings of fact, assessments of credibility and probative value of any of the evidence, the deposition discloses from Lenz's own admissions the basis for his termination.

Q. Okay. Can you tell me in your own words, please, what led to that termination, the facts surrounding the termination?

A. As I see the facts?

Q. Sure, that's what I'm asking.

A. Okay. There was a—I was discharged because I failed to show up for work on Saturday morning, which was the Saturday prior to Monday the 10th. I did not show up for work on that Saturday morning.

Q. Had you been previously notified?

A. Yes.

Q. That you were expected to show up for work, I think it's January 8th is the Saturday morning?

A. I believe that would be the date, yes.

Q. And you had been notified that you were expected to be there?

A. Yes, sir.

While the majority finds conflicting reasons for the discharge, a refusal to report for work is an indication of a bad attitude and a bad attitude is manifest in a refusal to report for work when directed. During Lenz's deposition the following questions and answers were recorded:

Q. Okay. Other than what you've told us about in the deposition today and the facts set forth in the section of the Complaint entitled "Plaintiff's Claim," are there any other facts that you know of to support your claim that you were discriminated against because of your age?

A. Facts I have, no. I cannot quote you any facts at this time. The situation was that the pressure was being put on the older, age-wise employees at Erdmann.

Q. What facts do you have, other than what you've told us about today and what is in that section of the Complaint entitled "Plaintiff's Claim" to support that statement?

A. I have none.

Confronted with the record, the trial court acted properly in granting the motion for summary judgment.

Although Lenz, during oral argument before this court, suggested that the trial court prematurely disposed of his motion for summary judgment before he had the opportunity to file the Demoise deposition, a search of the record discloses no effort on his part to request or even suggest that the trial court defer its ruling until said deposition was filed.

Initially, appellant's only assertion of error concerning outstanding discovery was directed to the entry of summary judgment before he had the opportunity to file the Demoise deposition.

Defendant's motion for summary judgment, together with briefs and supporting documents was filed on May 16, 1984.

Rule 10 of the Rules of the United States District Court for the Western District of Kentucky state that:

(a) **Motions, Responses, Etc.** There shall be filed with each motion a brief statement of the grounds for same, with citation of authorities relied upon; failure to do so may be good grounds for striking the motion. Response to any motion shall be in similar form and shall be filed with the Clerk no later than ten (10) days from the service of the motion. Failure to respond may be good grounds for sustaining the motion. A reply memorandum may be filed within seven (7) days after the service of the opposing memorandum. No others shall be filed unless requested by motion and granted by order of the Court. Upon the filing of

the motion and timely receipt by the Clerk of the response and reply, if any, the motion shall stand submitted to the Court.

(c) **Oral Argument; Submission.** All motions shall be submitted without oral argument on the memoranda filed unless otherwise ordered by the Court. Motions shall not be noticed for a time certain for hearing. If counsel for movant or respondent desires a hearing, he shall request in his motion or response that a hearing be set by the Court at a time convenient to the Court. If the Court determines that an oral hearing might be either helpful or necessary, it shall set a time for such hearing and notify all attorneys of record of the date. To expedite business, any Judge of this Court at any location of Court may make any provision by order for the submission of motions pursuant to Rule 78, Federal Rules of Civil Procedure.

Lenz noticed the DeMoise deposition to proceed after the final deadline for filing responsive pleadings and documents to the motion for summary judgment had expired and the motion had been submitted for disposition. During this period, Lenz requested no extensions of time to file any responsive pleadings or documents nor did he notify the court of his intention to submit the Demoise deposition for consideration in conjunction with the summary judgment disposition.[3] It is noteworthy that although the Demoise deposition was concluded on June 15, 1984, it was not filed until July 17, 1984 some fourteen days after the motion for summary judgment was granted. At no time during the period between the date that the motion was submitted for disposition did Lenz move the court for an extension to file additional documents, to supplement the record, file affidavits of any kind or request that the court withhold its decision until after the deposition was filed. After disposition of

the summary judgment motion Lenz made no effort to have the trial court reconsider its decision. He completely ignored the court's local rules as well as the Federal Rules of Civil Procedure including 56(e) and (f). Contrary to Lenz's assertion there is absolutely nothing that would even infer that Lenz, either by written motion or orally, requested that disposition of the motion for summary judgment be deferred pending the filing of the Demoise deposition. Lenz's answer to the motion for summary judgment was nothing more than a repetition of his counsel's conclusory and argumentative and self-serving declarations. Having no notice of any kind before it concerning the Demoise deposition, the trial court was under no duty to respond to a non-existent motion.

It is no wonder that the trial court proceeded to conclude the controversy as it did.

If appellant's discovery efforts fell short of his expectations, the fault was not that of the trial court, but rather appellant's complete indifference to the practices and procedures mandated by the Federal Rules of Civil Procedure and the Rules of the United States District Court for the Western District of Kentucky.

Accordingly, for the reasons stated herein, I would affirm the district court.

---

3. Incidentally, the deposition was entirely consonant with that of both the Lenz and Luan testimony that probed the reason for Lenz's discharge and, when viewed most favorably on behalf of Lenz, created no inference of age discrimination. Thus, even if the transcript of Demoise's deposition had been considered by the district court, it would not have changed the decision in any way.