820 F.2d 405
 49 Fair Empl.Prac.Cas. 754,
43 Empl. Prac. Dec. P 37,133
Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert J. RUTH, Appellant,
v.
ALLIS-CHALMERS CORPORATION d/b/a American Air Filter
Company, Appellee.
 No. 86-5555.
 United States Court of Appeals, Sixth Circuit.
 June 11, 1987.
 
 Before LIVELY, Chief Judge, BOGGS, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.
 LIVELY, Chief Judge.
 
 
 1
 The plaintiff in this age discrimination case was terminated at age 63 when his position was eliminated as part of the reorganization of his employer's sales forces. He brought this action pursuant to the Age Discrimination in Employment Act (ADEA or the Act), 29 U.S.C. Sec. 621, et seq. (1982), and a similar state statute, Kentucky Revised Statutes (K.R.S.) 344.010, et seq. Following extensive discovery and briefing the district court granted summary judgment in favor of the defendant and dismissed the action. In its summary judgment order the district court also denied plaintiff's motions to compel discovery of documents and to amend his complaint. Plaintiff appeals the three rulings.
 
 I.
 
 2
 Robert Ruth, a graduate engineer, began working for American Air Filter Company (AAF) in 1954 as a sales engineer. He advanced steadily to positions of branch manager and regional sales manager. In 1967 Ruth was brought to AAF's headquarters in Louisville, Kentucky and made Field Office Administration Manager. In this position he was not directly involved in sales, but sales personnel in the field reported to him administratively. Ruth reported directly to the president of AAF.
 
 
 3
 Allis-Chalmers Corporation (AC) took over AAF in 1978 and began a series of reorganizations. In February 1979 plaintiff's responsibilities were reduced and he began reporting to C. DiMercurio who had assumed the new position of Field Sales Officer, Equipment Sales Manager. DiMercurio now reported to the president. Prior to this reorganization Ruth and DiMercurio had been at approximately the same level in the sales organization, with different responsibilities. In a second reorganization, in December 1980, DiMercurio became National Sales Manager and the regional sales managers assumed line responsibility over all sales offices. These responsibilities, e.g., profit and loss and hiring and firing, had previously been part of plaintiff's charge. The 1980 reorganization also increased the number of regional sales manager positions from six to eight; however, only one of the added positions was filled.
 
 
 4
 It took approximately one year to complete the changeovers caused by the second reorganization. Sometime in 1981 DiMercurio recommended that plaintiff's position be eliminated because most of the work formerly done by Ruth was now being performed by regional sales managers. Ruth took the deposition of DiMercurio, who was no longer with AAF or AC. DiMercurio repeatedly denied that age was a factor in the decision to eliminate Ruth's position or to terminate him. DiMercurio testified that Ruth was considered but not recommended for a position as branch manager or regional sales manager. He stated that there were no sales or marketing jobs open in 1980 or 1981 for which Ruth qualified under company standards.
 
 
 5
 The factors that disqualified Ruth for such positions, according to DiMercurio, were lack of recent product knowledge and the necessity to move Ruth at company expense if he were given one of the jobs. He stated that there were people in the field with knowledge of and recent experience with AAF products who could assume the positions without relocating. DiMercurio and Frank T. Carroll, a product manager for AAF at the time of his deposition, agreed that Ruth had general knowledge of AAF's product lines, but that he lacked first-hand experience with new and improved products and would need to be "updated" in order to function as a branch manager or regional sales manager. AAF policy did not permit expenditures for updating if there were employees available and otherwise qualified who had current knowledge of the product lines. Carroll, who was also deposed by Ruth, estimated it would take "six months or so" to teach Ruth about an important new product that was completely different from any that AAF manufactured when Ruth was in the field. Other witnesses estimated the retraining time requirements as high as two years.
 
 
 6
 The decision to terminate Ruth was made in mid-1981. DeMercurio testified that, despite pressure to terminate Ruth as soon as his job was eliminated, he chose to make the termination effective in January 1982 because of additional benefits that would accrue to Ruth by keeping him in place beyond the end of 1981. Ruth was terminated as of January 15, 1982; his retirement pension was fully vested at that time.
 
 II.
 
 7
 In his charge to the Equal Employment Opportunity Commission (EEOC), Ruth based his claim of unlawful discrimination on the fact that when his position was eliminated two new regional manager positions were created and one was filled with a younger AAF employee. This was the same type position Ruth had held from 1964 to 1967. In addition, six other employees younger than Ruth holding the same position were retained by AAF when the reorganization occurred. In his district court complaint plaintiff stated he was offered no opportunities for transfer when his position was eliminated, while alleging that AAF retained younger employees with less experience for jobs he could have filled with greater skill. He also charged that AAF employs "a willful policy, pattern and practice of systemic age discrimination whenever it is involved in a reduction in force of its exempt salaried personnel during an economic downturn. The Defendant fails to assign the older, long-service employees to their rightful positions, but instead forces them into early retirement."
 
 
 8
 Plaintiff has conceded that he was terminated because his position was eliminated as part of a reorganization that included a reduction in force. Thus, he has never claimed that his termination in and of itself violated the ADEA. When asked at his deposition if he felt that his age was the cause of his position's being eliminated, Ruth replied, "No. The job was eliminated. I can't argue that point." He went on to say that while his job was eliminated, in the same reorganization "other jobs were created that I feel with my experience in the field as a sales engineer, branch manager, a regional manager, Manager of Field Administration, that I could fill one of those positions."
 
 
 9
 Thus the issue presented to the district court was whether AAF violated the Act by involuntarily retiring Ruth rather than offering him a position similar to one he had formerly occupied. In granting summary judgment for the defendant the district court stated that plaintiff was not "able to demonstrate that he was qualified for the new position which he sought to fill, that of Regional Manager or Branch Manager. In addition ... plaintiff has presented insufficient direct or circumstantial evidence which would indicate that age was a factor in his discharge." The court further held the fact that AAF was unwilling to retrain and relocate Ruth gave rise to no necessary inference that age was a determining factor in AAF's decision. This is the type business decision that an employer can make with impunity, the court stated, so long as an employee's age does not influence the outcome. On the entire record the district court concluded that Ruth had only presented suspicions, not evidence that would lead a reasonable jury to find that he was discharged or not offered jobs, because of his age. This being so, the court found no genuine issue of material fact and granted summary judgment. The district court also found that plaintiff did not meet the required standard of proof under the governing Kentucky statute and dismissed the pendent claim as well.
 
 III.
 
 10
 Plaintiff makes several arguments in support of his contention that the district court committed reversible error by granting summary judgment.
 
 A.
 
 11
 First, Ruth asserts that the district court erroneously found that he had not established a prima facie case because he was unable to show that the job he lost was filled by a younger person. This argument misconstrues the district court's opinion. Judge Ballantine recognized that a person whose job is eliminated will be unable to show that it was filled by a younger person. An eliminated job ordinarily is not filled. However, a plaintiff in such a case must show more than the fact that he was discharged from a position for which he was qualified and that he was a member of the protected class, that is, between 40 and 70 years old. The district court stated the additional requirement for a prima facie case as follows: "In a reorganization case, where the plaintiff was not directly replaced by a younger employee, the plaintiff is required to come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination." This language accurately reflects this court's decision in LaGrant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1091 (6th Cir.1984). Plaintiff's first argument has no merit.
 
 B.
 
 12
 Plaintiff's second through sixth arguments seek to show in various ways that his evidence was sufficient to create a genuine issue of material fact on the question of whether age was a factor in AAF's decision to terminate him when his position was abolished. Plaintiff maintains that there was evidence that AAF followed a policy of involuntarily retiring its older employees when they became eligible for full retirement at age 62. He identified several other employees who had been involuntarily retired at or about age 62, and argues that he produced sufficient statistical evidence to raise an inference that such a policy exists.
 
 
 13
 As further proof of the existence of genuine issues of material fact plaintiff argues that the district court failed to view evidence of the reason behind AAF's failure to offer him a position for which he was qualified in the light most favorable to him. Specifically, he contends that recent familiarity with the product line was not a serious shortcoming and that he could function as a regional sales manager from the Louisville headquarters, making relocation unnecessary. DiMercurio testified that lack of recent product knowledge was not the only factor in his decision to recommend Ruth's termination. The field sales force was reduced 25% between March 1980 and November 1982 because of declining orders. The witness testified there were no openings for plaintiff and that other, younger people also were terminated when their jobs were eliminated in the reduction.
 
 
 14
 AAF responds to Ruth's arguments, first, by pointing out there was no direct evidence that age was a factor in the decision to terminate plaintiff. In addition, AAF produced the names of eligible, over age 62, exempt employees who were retained, and maintains that there was no evidence of the reasons that motivated other employees to retire at or around age 62, making Ruth's statistical evidence meaningless. It was undisputed that AAF had a policy of not relocating employees to jobs that could be filled by others who were qualified and already in place. As the district court noted, although the cost of relocating Ruth might have been relatively small, whether to do so was a business decision that was not subject to second-guessing by a court. AAF also asserts that no witness identified a regional sales manager opening in 1981 that could have been filed by someone residing in Louisville.
 
 
 15
 In agreement with the district court AAF emphasizes that even Ruth admitted he would need some retraining to become sufficiently familiar with the product lines. Three witnesses whom Ruth deposed agreed that he would require "updating" and estimated the required time at between six months and two years. AAF argues that it had no duty to retrain plaintiff and move him to one of the regional manager locations when qualified people were available at those locations. AAF maintains that since there was no contrary evidence either with respect to the company policy on relocation or the necessity for a substantial period of retraining, the circumstantial evidence failed to establish a genuine issue of material fact on the question of whether age was a factor in AAF's decision. Finally, defendant notes, Ruth did not request appointment as a branch manager, regional sales manager or any other position in the field either when notified of the decision to terminate him, or thereafter.
 
 IV.
 
 16
 This court has held that the four criteria for establishment of a prima facie case of employment discrimination under Title VII of the Civil Rights Act of 1964 as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), should not be mechanically applied in ADEA cases. Laugesen v. Anaconda Co., 510 F.2d 307, 312 (6th Cir.1975). See also LaGrant v. Gulf & Western Mfg. Co., 748 F.2d 1087, 1090 (6th Cir.1984) ("This Court repeatedly has rejected strict adherence to the McDonnell Douglas criteria" in ADEA cases.); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66, 70 (6th Cir.1982) ("A mechanical application of the McDonnell Douglas guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists."). Instead we are to apply the ADEA on a case-by-case basis in view of the many different types of situations found in employment relationships. Laugesen, 510 F.2d at 312, quoting H.R.Rep. No. 805, 90th Cong., 1st Sess. This court adopted the following formulation in Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir.), cert. denied, 464 U.S. 939 (1983):
 
 
 17
 Hence, a plaintiff in an ADEA action establishes a prima facie case by presenting evidence which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age.
 
 
 18
 In Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1118 (6th Cir.1980), we rejected the claim that a plaintiff in an ADEA action establishes a prima facie case by showing that he was terminated during an economic cutback and that his employer retained a younger person in a position the plaintiff was qualified to fill and for which he was willing to relocate. That is exactly Ruth's position with respect to the branch manager positions and the regional sales manager positions in which qualified employees at the prescribed locations were retained even though some of those employees were younger than plaintiff (though some were in the protected age group). AAF was not required to discharge or demote other qualified employees to make a place for Ruth when his position was eliminated. There were only two open positions of a type that Ruth had previously filled as a result of the December 1980 reorganization. These were the additional regional sales manager positions. One of these positions was filled by an employee with recent experience in selling the AAF product lines who did not require relocation. The other position was never filled.
 
 
 19
 In a somewhat different factual setting this court has held that an employer who eliminates a plaintiff's job during a reduction in forces for economic reasons has no duty to transfer the employee to another position within the company. Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986). However, even if an employer in some situations has an obligation to offer an open position to a protected employee who is qualified for the position and whose job has been eliminated, Ruth would not qualify for such treatment under the undisputed evidence before the district court. Because of his lack of recent knowledge of the product line and the consequent need for a period of retraining and his location in Louisville rather than at the site of the new positions, Ruth did not qualify under established company policies.
 
 
 20
 The only evidence that Ruth's length of service or age was ever considered consisted of DiMercurio's testimony that he deferred the effective date of termination beyond December 31, 1981, in order to assure Ruth a larger pension. This determination was made, however, after the decision to terminate Ruth was final, or "cut and dried," according to DiMercurio.
 
 
 21
 The Supreme Court has recently refined the requirements for summary judgment in several cases. Language used in one of these cases is particularly applicable to AAF's motion:
 
 Under
 
 22
 Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 23
 Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 2552-53 (1986). Summary judgment was proper on the basis of the complaint and the record before the district court.
 
 V.
 
 24
 Plaintiff also appeals from the district court's denial of his motion to compel production of documents and his motion for leave to amend and supplement his complaint.
 
 A.
 
 25
 Plaintiff sought the compelled production of numerous documents and many were produced. This appeal only concerns denial of the motion to compel production of documents that dealt with engineering and sales information in the catalogue binders of AAF products available for sale in 1981. The order denying the motion stated that the court believed "the documents sought could produce no facts supportive of plaintiff's age discrimination claim which would change the results of the summary judgment."
 
 
 26
 Plaintiff argues that the district court erred in weighing the evidence he sought "sight unseen" rather than examining it in the light most favorable to plaintiff. Plaintiff sought the documents to show that there were few new products in the AAF line since he left the field and that he could obtain complete product knowledge within a short time in order to function as a regional or branch manager or in some other managerial sales or marketing position.
 
 
 27
 The court's ruling is subject to reversal only for abuse of discretion. York v. Tennessee Crushed Stone Ass'n, 684 F.2d 360, 363 (6th Cir.1982). The motion was filed on December 14, 1984, some 20 months after the action was begun, and the district court held it in abeyance until Ruth had taken the depositions of six present and former AAF employees. When the district court made its ruling it had been established without contradiction that Ruth would require some retraining in order to assume a managerial sales position in the field and that there were no openings that would not require him to relocate from Louisville. In view of established company policies, the district court correctly determined that the information sought by the motion would not change the outcome. The issue was not how long it would take Ruth to be prepared to assume the duties of various positions, but whether he was qualified to do so at the time the decision was made to terminate him, and whether there was a position then available that would not require him to relocate. Plaintiff produced no evidence that the company policies were otherwise. The information sought by the motion would not have supported an inference of age discrimination. We find no abuse of discretion in the denial of this motion.
 
 B.
 
 28
 On June 7, 1985, more than two years after commencement of the action and six months after AAF moved for summary judgment, plaintiff filed a motion for leave to amend and supplement the complaint. The tendered amendment sought to claim age discrimination in AAF's failure to consider plaintiff for openings that occurred after his termination. This is clear from the statement of purpose in the motion itself:
 
 
 29
 At all times since the Plaintiff was terminated by the Defendant up until the date of this pleading and beyond, the Plaintiff has been ready, willing and able to return to employment with the Defendant to positions of high levels of management, authority and responsibility commensurate with the Plaintiff's ability, knowledge, experience, and performance level. During this time span, the Defendant has had many such positions open, which have been filled by the Defendant, for which the Plaintiff would be interested in being considered for such employment and for hire to such employment. Yet, the Defendant has refused to interview the Plaintiff for such openings and has failed to consider the Plaintiff for rehiring because of the age of the Plaintiff and the fact that the Plaintiff has filed this lawsuit.
 
 
 30
 Amendments to pleadings are covered by Rule 15, Fed.R.Civ.P., subsection (a) which states in part:
 
 
 31
 a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.
 
 
 32
 Ordinarily amendments should be tendered by the time of pretrial, and when they are offered at a late stage in district court proceedings, the cause for delay should be carefully scrutinized. Head v. Timken Roller Bearing Co., 486 F.2d 870, 874 (6th Cir.1973). While delay alone is not ordinarily a sufficient reason for disallowing an amendment, it may be considered along with prejudice to the opposing party and other factors. Duchon v. Cajon Co., 791 F.2d 43, 47 n. 1 (6th Cir.1986). The decision whether to permit an amendment to pleadings is committed to the sound discretion of the trial court, Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971), and the court should give reasons for disallowing an amendment unless the reason is apparent from the record. Duchon, 791 F.2d at 48.
 
 
 33
 The district court stated its reason for denying the motion to amend and supplement the complaint in its order: "[I]t seeks to assert causes of action occurring after plaintiff's termination by the defendant." This was a sufficient statement. Neither the administrative complaint to the EEOC nor any previous filings had charged discrimination in failing to interview or consider rehiring plaintiff after his termination.
 
 
 34
 It is a requirement of the ADEA that a claimant file a charge with the EEOC, or the appropriate state agency in a "deferral" state, as a prerequisite to an action in district court to enforce rights under the Act. In determining whether a claim made in district court was included in a charge to the EEOC, a liberal construction should be given the charge. As this court has stated, "the complaint in the judicial proceedings is only limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 131 (6th Cir.1971) (citations omitted). Since termination is a discrete act, and Ruth complained specifically of decisions preceding and contemporaneous with that act, an investigation of alleged failure to offer him positions that became available at a later date would not reasonably be expected to grow out of the complaint. This is especially true in view of the fact that Ruth never asked to be considered for any of the available positions, either those resulting from the reorganization or those that allegedly became available after his termination.
 
 
 35
 The district court did not abuse its discretion by denying the motion to supplement and amend the complaint. The entire thrust of the case to that time had been that AAF discriminated against plaintiff by terminating him following the reorganization rather than reassigning him to a sales or marketing management position. The complaint to the EEOC referred specifically to the two new positions of regional manager created in the reorganization and the six other positions of regional manager continued as part of the reorganization. Similarily, the district court complaint referred only to AAF's failure to offer plaintiff positions identified as available at the time of his termination. The tendered amendment would have introduced an entirely new claim into the proceedings.
 
 VI.
 
 36
 Judge Celebrezze states in his dissent that the district court should have treated this as a refusal to hire case rather than one involving a discriminatory discharge. However, Ruth did not plead that AAF violated the ADEA by refusing to hire him. Neither did he offer proof that he applied for a position and was rejected because of his age. Never, in either the district court or in this court, did he rely on a refusal to hire theory. The district court decided the case on the very basis chosen by Ruth in presenting it--a claim of a discriminatory discharge that violated the ADEA. Summary judgment was proper on the pleadings and entire record before the district court.
 
 
 37
 The judgment of the district court is affirmed.
 
 
 38
 CELEBREZZE, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 39
 I concur with the majority's affirmance of the district court's refusal to permit Ruth to amend his complaint to state causes of action arising after his discharge which were not the subject of Ruth's EEOC charge. I believe, however, that the district court failed to perceive the essential substance of Ruth's complaint against Allis-Chalmers, and misconstrued the nature of the defendant's proof concerning the reasons Ruth was not selected to occupy the vacant position of Regional Sales Manager. Moreover, I conclude that Ruth established a prima facie case of age discrimination and offered sufficient evidence to create a genuine issue of material fact concerning the reasons he was denied the Regional Sales Manager job. Accordingly, I respectfully dissent from the majority's affirmance of the district court's grant of summary judgment to the defendant and the trial court's denial of Ruth's motion to compel the production of certain documents.
 
 
 40
 The district court ostensibly applied the traditional elements necessary to establish a prima facie case of discriminatory discharge, modified to apply to this reduction-in-force situation, in determining that Ruth had failed to establish a threshhold showing of age discrimination. Therefore, the district court required Ruth to make out a prima facie case by showing that: (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) direct, circumstantial, or statistical evidence demonstrated that age was a factor in his termination. See Wilkins v. Eaton Corp., 790 F.2d 515, 520 (6th Cir.1986); LaGrant v. Gulf & Western Manufacturing Co., 748 F.2d 1087, 1091 (6th Cir.1984). I agree with the district court, although for slightly different reasons, that Ruth failed to make the necessary showing to sustain a traditional reduction-in-force discriminatory discharge case. Ruth was clearly within the class protected by the ADEA and had been discharged. Contrary to the district court's finding, I believe that Ruth met the "qualification" element of the prima facie case. The district court concluded that Ruth was not qualified for the position of Regional Sales Manager. Viewed as a discharge case, however, the focus here is on whether Ruth was qualified for the position from which he was being discharged, not some other position within the company. There is nothing in the record to suggest that Ruth was not qualified for the position of Field Office Administration Manager, which he had held for fourteen years prior to his employment termination. Nevertheless, Ruth did not establish a prima facie case of discriminatory discharge because he failed to demonstrate with direct, circumstantial, or statistical evidence that his discharge resulted from anything more than the elimination of his employment position as the result of Allis-Chalmers' reorganization. The deficiency of Ruth's proof in this regard precludes finding that he established a prima facie case of discriminatory discharge "by presenting evidence which ... would permit a reasonable jury to find that he was discharged because of his age." Rose v. National Cash Register Corp., 703 F.2d 225, 227 (6th Cir.), cert. denied, 464 U.S. 939 (1983).
 
 
 41
 In my view, however, this case does not represent a discriminatory discharge situation at all. Although Ruth's termination provided the impetus for the lawsuit, the gravamen of Ruth's claim against Allis-Chalmers is that the company failed to retain him be impermissibly basing its decision ot to employ him as a Regional Sales Manager on the consideration of his age. Ruth's discharge from the company was, in effect, merely the result of Allis-Chalmers' decision not to employ him in the new position, since, without employment in a different capacity, Ruth had nowhere else to go except out the door following the legitimate, nondiscriminatory elimination of his old job. Indeed, with his job being eliminated, Ruth's situation was indistinguishable in salient respects from that of any other applicant vying for the new position within the company. Consequently, the key issue in this apparent discharge case devolves into whether Allis-Chalmers violated the ADEA by "refusing to hire" Ruth as the new Regional Sales Manager.[1] Cf. Stacey v. Allied Stores Corp., 768 F.2d 402, 406-07 (D.C.Cir.1985) (job elimination during corporate reorganization and company's refusal to retain employee in a different position viewed as two distinct allegations, the second being the "refusal-to-hire prong of [the plaintiff's] attack."). Analyzed as a refusal-to-hire case, I find that Ruth established a prima facie case regarding the company's denial of the Regional Sales Manager position to him.
 
 
 42
 Initially, Ruth was unquestionably within the ADEA protected class and was rejected for the new position, which was given to a person younger than Ruth. More importantly, contrary to the district court's finding, I believe that Ruth, an exemplary employee who had risen through management beyond the level of Regional Sales Manager through twenty-seven years of continuous service, was qualified for the position. Indeed, I conclude that a finding that Ruth was not qualified for this position can be justified only if Allis-Chalmers' reasons for not selecting Ruth can be properly characterized as immutable, threshold requirements for the job. However, a review of the pleadings, motions, memoranda, and depositions before the district court convinces me of the contrary. The company merely desired to fill the position with a person possessed of recent product knowledge who would not require relocation, and utilized those factors as two of many criteria for determining which of the otherwise qualified aspirants to the position would eventually be selected. Despite Allis-Chalmers' designation of the product knowledge and relocation matters as "qualifications" in its motion for summary judgment, and its suggestion to this Court that Ruth "was not considered" for the Regional Sales Manager position because he did not meet the "requirements" of that job, Appellee's Brief 5-6, the evidence before the district court clearly demonstrates that the two considerations were "factors" and "criteria" in the selection process, and that Ruth was considered for the position and c with other candidates, but was just not picked for the job.[2] DiMercurio's deposition clearly states that Ruth was a "candidate" for the new position, and that product knowledge was only one of a number of "factors," and probably not the predominant one, considered when evaluating persons for the job. His affidavit supporting Allis-Chalmers' summary judgment motion expressed only that Ruth was not "selected" as Regional Sales Manager, because he lacked recent product knowledge and because the company was not "in a position" to incur the costs of relocation.
 
 
 43
 Therefore, far from being job "qualifications" at all, I believe that the two reasons expressed by the company for not selecting Ruth are nothing more than legitimate, nondiscriminatory reasons for Allis-Chalmers' employment decision. As such, those reasons do not preclude finding that Ruth made out a prima facie case. To apply some "business judgment rule" to accept as true a discrimination defendant's articulated justification for its employment action, elevate its defense to the level of a job "qualification," and then proceed to deprive a plaintiff of his or her day in court on the ground that a prima facie case has not been established, as did the district court in the instant case, would amount to far more than deference to a corporate defendant's business decisions. Such an approach could, in many instances, deny a plaintiff the opportunity to demonstrate that the defendant's justifications were pretextual. A wholesale application of such reasoning would seriously dilute the discrimination laws by requiring plaintiffs, in order to avoid summary judgment, to prove to the court's satisfaction that the "qualifications" advanced by the defendant had in fact been met, despite the possibility that the so-called "qualifications" are camouflage for discriminatory employment practices. In the instant case, for example, the district court required Ruth to prove that he had recent product knowledge, such that he would have required absolutely no training in this area to assume the duties of Regional Sales Manager, and that he would have subjected Allis-Chalmers to absolutely no relocation expense, despite the fact that these "qualifications" are merely the justifications articulated by the company for not selecting Ruth, which Ruth may have been able to show were pretexts for age discrimination. Accordingly, I find that Ruth, who was considered by the company as a bona-fide candidate for the Regional Sales Manager position, was qualified for the position, and that Allis-Chalmers had come forward with legitimate, nondiscriminatory reasons for its selection of a Regional Sales Manager other than Ruth.
 
 
 44
 Finally, I believe that Ruth completed the establishment of a prima facie case by introducing statistical and deposition testimony which demonstrated that he was not selected for the Regional Sales Manager "under circumstances which give rise to an inference of unlawful discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (footnote omitted). This evidence, together with the foregoing "elements,"[3] clearly sufficed to shift the burden of production to the defendant. See Ridenour v. Lawson Co., 791 F.2d 52, 55 (6th Cir.1986) (quoting Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 291 (8th Cir.1982), cert. denied, 459 U.S. 1205 (1983)). Ruth produced statistical evidence which showed that numerous persons within the protected age group had voluntarily quit or were involuntarily terminated between 1979 and 1983, and that as of January 1, 1985, only 20 of 963 salaried employees were over age 62 and only 3 "exempt" salaried employees out of 561 remained with the company although eligible for full retirement, and none were present by June, 1985. Although this evidence, standing alone, is inconclusive, Ruth supplemented his statistics with the deposition testimonies of former employees who had been promoted or transferred before reaching age 62, only to have their employment abruptly terminated after reaching this age and acquiring fully vested retirement benefits. In addition, Allis-Chalmers' own justification for the timing of Ruth's discharge raises the spectre of age discrimination. Allis-Chalmers contended that Ruth was "carried" by the company until he reached age 62, rather than discharged earlier, so that Ruth could receive higher retirement benefits immediately after leaving the company. While this seems at first blush a magnanimous gesture, it also supports Ruth's argument that the company had an eye on employees' ages and would terminate, rather than transfer, older employees whose jobs were eliminated. To the same effect is DiMercurio's testimony that the company's concern was to get Ruth "fully vested so that he would not have any reduction in retirement, so we were not thinking of transfer to other divisions or other jobs." Jt.App. 479. Unlike the majority, I would leave to the jury, exercising its functions of weighing the evidence and passing upon credibility, to determine in the first instance if this concern with age and retirement benefits underlay the rejection of Ruth as Regional Sales Manager, or only manifested itself after the decision to discharge Ruth had become final.
 
 
 45
 With Ruth's establishment of a prima facie case and Allis-Chalmers' articulation of legitimate, nondiscriminatory reasons for its decision not to make Ruth the new Regional Sales Manager, the presumption of discrimination created by the prima facie showing drops from the case, and the inquiry "proceeds to a new level of specificity." Burdine, 450 U.S. at 255; Wilkins, 790 F.2d at 521. The question becomes whether Ruth could have met his ultimate burden in the case by proving that " ' "but for" his employer's motive to discriminate against him because of his age,' " Wilkins, 790 F.2d at 520 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir.1979)), he would have been selected as the Regional Sales Manager and not discharged. A discrimination plaintiff can meet this burden by establishing that the legitimate, nondiscriminatory reasons articulated by the defendant employer were pretextual, and can make this showing of pretext either by establishing by a preponderance of the evidence that the discriminatory reason was the true reason motivating the employer's conduct or by showing that the proffered legitimate reasons were false. Burdine, 450 U.S. at 256; Sims v. Cleland, 813 F.2d 790, 792-93 (6th Cir.1987). Consequently, summary judgment would be appropriate in the instant case only if it was clear that Ruth could not produce sufficient evidence at trial to demonstrate pretext by either method.
 
 
 46
 After reviewing the record, I am not convinced that Ruth could not have made such a showing of pretext. Initially, I note that summary judgment on issues of intent and motive are rarely appropriate. Lenz v. Erdmann Corp., 773 F.2d 62, 64 (6th Cir.1985) (per curiam). More importantly, however, the statistical and deposition evidence produced by Ruth to establish his prima facie case also acts to create a genuine issue of material fact concerning the reason he was not offered the position of Regional Sales Manager. See Ridenour, 791 F.2d at 56 ("In determining whether the defendant's proffered legitimate, non-discriminatory reasons for its actions were pretextual, the trier of fact may rely on the evidence introduced to establish the prima facie case and any inferences properly drawn therefrom."). In addition, it is uncontroverted that Ruth helped train the existing Regional Sales Managers in administrative matters necessary to the performance of their jobs, yet the company claims that Ruth was unqualified for the position because he would require some measure of retraining. In light of this, Ruth would have gone a long way at trial to demonstrating pretext merely by establishing that any retraining and relocation expense would have been minimal. In sum, after viewing all of the evidence in the light most favorable to Ruth, as I must do, I cannot endorse the district court's grant of summary judgment to Allis-Chalmers by concluding that a rational jury could have reached only one conclusion, favorable to the defendant.
 
 
 47
 Finally, it is evident that under my analysis of this case Ruth's ability to convince a jury that the company's reasons were pretextual could quite likely hinge on his success in demonstrating that any updating of his product knowledge would have been so minimal that the defendant's justification for not selecting him as Regional Sales Manager was unworthy of credence. Accordingly, in addition to reversing the district court's grant of summary judgment to Allis-Chalmers, I would have also found an abuse of discretion in the district court's denial of Ruth's motion to compel the discovery of those documents dealing with product engineering and sales information.
 
 
 48
 In light of the foregoing, I concur only in the affirmance of the district court's denial of Ruth's motion to amend the complaint. Otherwise, I respectfully dissent.
 
 
 
 [1]
 I note at this juncture that if this case is analyzed as a more or less traditional refusal to hire/refusal to promote type of case, the fact that Allis-Chalmers was not obligated under the ADEA to transfer Ruth to another position within the company following the elimination of Ruth's job for economic reasons, see Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986); Sahadi v. Reynolds Chemical, 636 F.2d 1116, 1117-18 (6th Cir.1980) (per curiam), becomes irrelevant. The company knew of Ruth's desire to continue his employment, had a policy of considering employees for different positions within the company when jobs were eliminated, and, as the majority notes, did consider Ruth for the Regional Sales Manager position. Under these circumstances, Allis-Chalmers had an affirmative duty to conduct its evaluation of all aspirants to the new position in a nondiscriminatory manner. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 120-21 (1985)
 
 
 [2]
 See, e.g., Jt.App. 50 (Defendant's Answers and Objections to Plaintiff's Revised First Interrogatories), 352-53 (Reply to Response to AAF's Motion for Summary Judgment), 476, 483-84 (Deposition of DiMercurio)
 
 
 [3]
 The majority correctly states that this court has often eschewed a strict application of the McDonnell Douglas-Burdine prima facie elements in age discrimination cases. See, e.g., LaGrant v. Gulf & Western Manufacturing Co., 748 F.2d 1087, 1090 (6th Cir.1984). Consequently, I only note in passing that demonstrating that Ruth was a member of the protected class, was qualified for the position of Regional Sales Manager, and was rejected in favor of a younger person would have been sufficient, without more, to establish a prima facie case under the guidelines of Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), as applied to ADEA actions