**Clark B. GIBSON, Plaintiff,**

v.

**Anthony M. FRANK, et al., Defendants.**

**No. C–1–89–0043.**

United States District Court,
S.D. Ohio, W.D.

Sept. 24, 1990.

---

Robert Francis Barnes, Jr., Rack, Vale, Burke, Fitzgerald, Burns & Balash, Cincinnati, Ohio, for plaintiff.

Donetta Donaldson Wiethe, U.S. Dept. of Justice, Cincinnati, Ohio, Maura A. Johnston, Office Field Legal Services, Philadelphia, Pa., for defendants.

## ORDER

HERMAN J. WEBER, District Judge.

This matter is before the Court upon Defendant Postmaster General Anthony M. Frank's Motion for Summary Judgment. (doc. no. 12). Memoranda in opposition to and in support of such Motion have been filed by the Parties. (doc. nos. 15, 17). A hearing was held on Friday August 8, 1990 at which time the Parties presented their respective positions on such motion.

## I. FINDINGS OF FACT

1. Plaintiff was hired by the United States Postal Service ("Postal Service") in 1982 as a "part-time flexible" mailhandler. He became a regular, or full-time, mailhandler in 1983.

2. A mailhandler's duties include culling, or sorting, mail and distributing mail bags according to zip code.

3. Plaintiff subsequently became a Level PS–5 "Mark II Operator," an employee who operates a mail processing machine which prepares mail for further sorting. He continues to hold the position of "Mark

II Operator, level 5, at the present time. Plaintiff has briefly held other positions during his postal employment. The designation "PS" indicates a "Postal Service," or nonsupervisory position.

4. Plaintiff was a union steward for about nine months, from August, 1983, to April, 1984, and was an acting supervisor for periods of one day up to one week at various times from 1986 to 1988.

5. Prior to becoming a postal employee plaintiff held a variety of jobs in which he, *inter alia*, acted as a nursing assistant; typed; operated a switchboard; filed; acted as a library assistant; processed purchasing forms; and, taught part-time. He has a bachelor's degree in political science, which he obtained in about 1978, and has taken certain graduate courses, including the history of unionism and work psychology.

6. On July 7, 1986, the position of Postal Service Labor Relations Assistant, Level EAS–16, in Cincinnati, Ohio was posted as vacant. The designation "EAS" indicates an "Executive Administrative Schedule," or supervisory position.

7. The above-referenced vacancy announcement states that the functional purpose of the position in question is to serve as a subordinate to a Labor Relations Representative, specialist and/or executive assigned to a facility, assisting in the resolution of labor relations and Equal Employment Opportunity ("EEO") problems or complaints affecting grievances and labor relations. The training requirements are stated as: ... at least six (6) months of current continuous career postal service together with "college level understanding of business, personnel, or labor relations administration." Minimum experience in labor relations, collective bargaining, and training activities, as well as well-developed human relations and communication skills, were also required.

8. The cutoff date for applicants was July 17, 1986 at 4:15 p.m. Plaintiff Gibson timely filed his application.

9. Thirty-six individuals, including plaintiff, applied for the Labor Relations Assistant position. The applications, or "991's," were evaluated by a three member Promotion Review Board ("Board") consisting of Kenneth Nelms, the Chairperson (race: white); Sharon Neal (race: black); and Frank Furio (race: white). The three members of the Board had no familiarity with plaintiff, and they were unaware of his race.

10. Board members Nelms and Furio met in Cincinnati and conferred with Ms. Neal by telephone with respect to the applicants for the position at issue.

11. The Board members reviewed the vacancy announcement, the job description, and the applications and then provided to the selecting official the names of the five best qualified applicants. Experience, education, and supervisor evaluations were the primary factors considered by the Board.

12. Plaintiff Gibson is a black male and met all qualifications set forth in the Service's Vacancy Announcement for which he applied on July 15, 1986. Plaintiff was not selected as one of the five best qualified applicants, and was not interviewed. Of the five persons who were recommended to the selecting official by the Promotion Review Board, four were caucasians and one was black.

13. The Selecting Official in this matter was Labor Relations Representative Charles Abney. On August 19, 1986, he selected Edward Fisbeck, one of the five recommended by the Promotion Review Board, for the Labor Relations Assistant position. Mr. Fisbeck has been employed by the Postal Service since 1959, and had held the position of Supervisor of Mails from 1978 to the time of his promotion to the position at issue. Mr. Fisbeck served a detail, or temporary assignment, as a Labor Relations Assistant beginning in April 1986 and details to several Level EAS–15 and 17 positions from 1981 through 1986. He was recommended "without reservation" by his supervisors.

14. Mr. Fisbeck does not have a college degree. The "college level understanding" required for the position at issue did not have to be reflected in a college degree, but could be high school level with supervisory

experience. Mr. Fisbeck, as a Supervisor of Mails from 1978 forward, had acquired experience in business; personnel; training; time keeping; monitoring of attendance; pay administration and grievance procedures. Mr. Fisbeck met the qualifications for the position through his experience as a Supervisor of Mails, other EAS level positions he had held, and the Labor Relations detail.

15. The four other applicants recommended by the Promotion Review Board were as follows:

a. Joann Anderson (race: black). Ms. Anderson had a college degree and had agency training at the Postal Service management academy. She had been employed by the Postal Service since 1978, and had served as supervisor of mails, level EAS–15, since 1984. She had experience as a Personnel Assistant. She was recommended "without reservation" by her supervisors.

b. Dan Bessler (race: white). Mr. Bessler had a college degree, as well as Postal Service training. He had been employed by the Postal Service since 1976, and had been a supervisor of mails, level EAS–15, since 1979. He had served a detail as a "Step 2" grievance designee, and several other EAS details from 1982 through 1985. He was recommended "without reservation" by his supervisors.

c. Peter Boyer (race: white). Mr. Boyer had completed certain college course work and had Postal Service training. He had been employed by the Postal Service since 1974, and had served as a superintendent of a postal station, level EAS–15, since 1985. Mr. Boyer served a detail to Labor Relations and several EAS positions from 1981 through 1986. He was recommended "without reservation" by his supervisors.

d. David Haynes (race: white). Mr. Haynes has an undergraduate college degree and an MBA, as well as agency training, including the management academy. He had been employed by the Postal Service since 1975 and had been a management trainee, level EAS–14, since 1984. He served a detail to Labor Relations and

several other details to EAS–15 and 16 positions from 1984 through 1986. He was recommended "without reservation" by his supervisors.

16. Chairman Nelms was an EAS–19 in Labor Relations and it was his promotion on July 5, 1986 which caused this vacancy to exist. The position he vacated on July 5, 1986 and the position set forth in the vacancy were the same job. His promotion on July 5, 1986 was to an EAS–22.

17. Fisbeck had been detailed to this same position on April 1, 1986, a procedure with no criteria for selection.

■ 18. Plaintiff asserts that a procedural irregularity was involved in Mr. Fisbeck's detail to Labor Relations which began in April 1986. Specifically, Plaintiff asserts that because Mr. Fisbeck was detailed to that position for a period exceeding sixty days, the detail violated section 353.345 of the Postal Service's Employee and Labor Relations Manual. That section provides, in relevant part:

Temporary assignment to a higher-grade *vacant* position, pending selection of a person for permanent assignment, is limited to a total of not more than 60 calendar days. If the employee on temporary assignment is a candidate for the *vacant* position, the higher grade assignment must be terminated before the 61st day. If that employee is not a candidate, the next-higher level of management above the appointing official may approve an extension of that employee's temporary assignment beyond 60 days, until a selection is made and approved and the new incumbent assumes the position. (Underlining emphasis added.)

19. This Court rejects the assertion of Plaintiff and finds that there was no "vacant position" until the prior employee, Kenneth Nelms, was "promoted out" of the Labor Relations Office on July 5, 1986, as a result of the Postal Service's reorganization. Prior to that time, Mr. Fisbeck's detail was not "pending selection of a person for permanent assignment," because there was no vacancy to which anyone could be permanently assigned. The sixty day peri-

od specified in section 353.345 did not begin to run until July 5, 1986, when the vacancy at issue arose.

20. There had been no Labor Relations job openings in Cincinnati prior to the date at issue since at least 1973. During the period 1973 to 1986 (the year when the job opening involved in this case occurred) both black and caucasian employees were given temporary assignments, or "details," in the Labor Relations Department.

21. In September 1986 plaintiff contacted a Postal Service EEO counselor concerning his allegation that he was discriminated against on the basis of his race (black) when he was not selected as one of the five recommended for the Labor Relations Assistant position. In April 1987 he filed a formal EEO complaint. His allegations of discrimination were investigated by the Postal Service's EEO Office. Based on this investigation, the Postal Service issued a proposed disposition finding no discrimination.

22. Plaintiff then requested a hearing on his EEO complaint, which was held on July 13, 1988, before an administrative judge appointed by the Equal Employment Opportunity Commission ("EEOC"). The EEOC administrative judge subsequently entered a recommended finding of no discrimination, which the Postal Service adopted as its final agency decision.

23. Plaintiff is a member of a protected group, he properly applied for the position and was qualified, he was not selected, a person not of his protected group was selected to fill the position, race was not a determining factor in the selection process. The five individuals recommended by the Promotion Review Board, one of whom was of his protected group, were more qualified for the position than Plaintiff.

## II. CONCLUSIONS OF LAW

1. Plaintiff's cause of action for discrimination based upon race arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

2. The Court herein addresses both the "disparate treatment" and "disparate impact" forms of discrimination.

3. In order to prevail upon a claim of "disparate treatment" discrimination, a plaintiff is required to prove a *prima facie* case of purposeful discrimination by a preponderance of the evidence. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To do so, the plaintiff must prove that his nonselection for the position at issue arose under circumstances sufficient to give rise to an inference of intentional unlawful discrimination. See *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Bellissimo v. Westinghouse Electric Corp.*, 764 F.2d 175 (3d Cir.1985). The Plaintiff must be a member of a protected group; apply and be qualified for the position in question; not be selected; and a person of comparable qualification, not within the Plaintiff's protected group, was selected. *Id.*

4. Once the plaintiff establishes a *prima facie* case of race discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Here, the employer's burden is not one of persuasion but only of "production, *i.e.*, a burden to articulate or state a valid reason" for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. *See also, Sones–Morgan v. Hertz Corp.*, 725 F.2d 1070, 1072 (6th Cir.1984); *Hall v. Ledex, Inc.*, 669 F.2d 397, 399 (6th Cir.1982). In other words, the employer is not required to prove that it was motivated by a nondiscriminatory reason, but merely to produce evidence that its action was based upon legitimate, permissible considerations. *Burdine*, 450 U.S. at 256–258, 101 S.Ct. at 1095–96.

5. If the employer's evidence raises a genuine issue of fact, the burden of production shifts back to the Plaintiff to establish by a preponderance of the evidence that the legitimate reason proffered by the em-

ployer is merely pretextual, or not the true reason for its action. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). See also *Miller v. WFLI Radio, Inc.,* 687 F.2d 136, 138 (6th Cir.1982). At this stage, the requirement to prove pretext merges with the plaintiff's ultimate and continuing burden of persuading the court that he was the victim of intentional discrimination, as indicated, a burden the plaintiff retains at all times. *Burdine,* 450 U.S. at 254–6, 101 S.Ct. at 1094–95; *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 798 (9th Cir.1982).

■ 6. Plaintiff has not made out a *prima facie* case of discrimination. He has not proven that any similarly-situated person, not of his protected group, was treated more favorably than he.

7. There were thirty-six applicants for the Labor Relations Assistant position at issue. These thirty-six individuals' "991's" (application forms) were reviewed by a Promotion Review Board consisting of a black member and two white members. Pursuant to standard procedures, and following their review of the application materials, the Board recommended five (5) of the applicants to the selecting official for further consideration. The five individuals so recommended included one black and four caucasians. There was no racial discrimination in this screening process: the Promotion Review Board included a black member, and one of the recommended applicants was black.

8. Plaintiff was not among the five applicants recommended by the Promotion Review Board. He asserts that his elimination from the job competition at this juncture was discriminatory. None of the three Board members, however, knew plaintiff or his race prior to the review process. Because the Board members did not know plaintiff's race, they could not have discriminated against him on that basis. *Robinson v. Adams,* 847 F.2d 1315 (9th Cir.1987) (employer cannot intentionally discriminate on basis of race against job applicant whose race it does not know). Plaintiff has failed to establish that any

discrimination occurred in his rejection or in the process of selection.

■ 9. Assuming arguendo, plaintiff made out a *prima facie* case, defendant has articulated legitimate, nondiscriminatory reasons for recommending the promotion of five other employees to the position at issue, the five were the best qualified.

10. The Postal Service presented legitimate, nondiscriminatory reasons to support the Board's selection of five applicants other than plaintiff for recommendation to the selecting official. The job involved here required "college level understanding" of business, personnel, or labor relations administration. That level of understanding could, in the Board members' view, be achieved through Postal Service supervisory experience. All five of the recommended applicants had held EAS, or supervisory-level positions for substantial periods of time. Plaintiff, by contrast, held a non-supervisory job. He had only brief experience, for periods of one day to one week, as an acting supervisor, beginning in January of 1986, some seven months before the posting of the vacancy at issue. Further, the job required "minimum experience" in labor relations and collective bargaining. All of the recommended applicants had management-level experience in labor relations or personnel. Two years prior to the vacancy, Plaintiff had only served as a union steward for a period of about nine months.

11. The individual who was ultimately selected for the position, Edward Fisbeck, had been a full-time Postal Service supervisor for roughly eight years at the time of his promotion to the position at issue. He had been a postal employee for over twenty-five years. The Postal Service's selection of Mr. Fisbeck for the position at issue was based on legitimate, nondiscriminatory reasons.

12. Defendant's articulated reasons for the nonselection of plaintiff have not been shown to be pretextual.

13. Plaintiff asserts that the Mr. Fisbeck's detail to the Labor Relations Department was procedurally improper. This

Court rejects that assertion in connection with plaintiff's allegation of disparate treatment. Plaintiff has not proved any discriminatory intent in connection with that detail nor has Plaintiff established any procedural impropriety with that detail.

14. With respect to plaintiff's "disparate impact" claim, in a Title VII disparate impact case, questions of motivation and intent are not at issue. Rather, the premise of a disparate impact case is that some facially neutral employment practice may violate Title VII even in the absence of a demonstrated discriminatory intent. Consequences of employment practices, rather than motivation for those practices, is the prime concern of the court. *Lynch v. Freeman,* 817 F.2d 380 (6th Cir.1987). See *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). In order to make out a *prima facie* case of disparate impact, a plaintiff must establish that there is a disparity between the racial composition of the group of qualified persons in the relevant labor market and that of the group of persons holding the jobs at issue. *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Once these consequences are shown to have a racially discriminatory effect, the employer must show a legitimate purpose for the practice complained of. *Wards Cove Packing Co. v. Atonio,* 109 S.Ct. 2115, 2118 (1989).

15. Plaintiff's disparate impact theory is based upon his allegation that "the Department for which [plaintiff] sought promotion, Labor Relations, never had a minority employee permanently assigned to it." Plaintiff contends that some unspecified promotion procedure caused this alleged state of affairs.

16. There were no Labor Relations openings between 1973 and the time the vacancy at issue arose in 1986. No individual of any race was newly assigned to that Department during that thirteen-year period, as there were no permanent jobs available. Both black and white individuals were given temporary assignments, or "details," in the Department during that peri-

od. The bare fact that no minority employee was permanently assigned to Labor Relations during that period without any other supporting documentation does not establish a *prima facie* case of disparate impact.

17. There is no evidence of record addressing the racial composition of the qualified labor pool, or even of qualified applicants, over any period of time. Nor has Plaintiff established the required identification of a facially neutral "specific employment practice" allegedly resulting in disparate impact. See *Watson, supra.* Rather, Plaintiff has only asserted an alleged procedural irregularity in the assignment of a "vacant position" which may or may not have affected only the five applicants selected for consideration.

18. When a plaintiff asserts a *prima facie* case of disparate impact with respect to any specific employment practice, plaintiff retains the burden of proving that the challenged practice serves no legitimate goal of the employer. *Wards Cove, supra.* There is no evidence of record which shows that any Postal Service employment practice lacks a legitimate basis. Under the disparate impact criteria set forth in *Wards Cove, supra,* there is no evidence of record which supports a disparate impact claim. Accordingly, plaintiff's disparate impact claim fails.

19. For the above reasons, Defendant's Motion for Summary Judgment is hereby GRANTED. Plaintiff's complaint is hereby DISMISSED in its entirety against all defendants.

IT IS SO ORDERED.